**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANA TAMBERELLI,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No.   3:16-cv-01681-RDM** |
| **v.** | : | |
| | : | |
| **ALKERMES, INC.,  MICHAEL BAUER,** | : | |
| **MICHAEL BROUSSEAU, and** | : | |
| **MADELINE COFFIN,** | : | |
| **Defendants.** | : | **JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT**

**I.  PRELIMINARY STATEMENT**

This is an action for an award of damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Plaintiff, Dana Tamberelli (hereinafter "Plaintiff").  Plaintiff was an employee of Defendant Alkermes, Inc. (hereinafter "Alkermes"), who has been harmed by gender and/or disability-based discrimination and retaliatory practices, as well as other improper conduct by Alkermes and its agents, servants, and representatives.

This action is brought under Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*., the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.,* and the Pennsylvania Human Relations Act, 43 Pa.C.S.A.  § 951 *et seq.*

**II.  JURISDICTION AND VENUE**

1.      The original jurisdiction and venue of this Court is invoked in this District pursuant to Title 42 U.S.C. § 2000e-5(f), 28 U.S.C. §1331 and 1391, 2201, 2202, 1343 and the claim is substantively based on Title VII, as amended, 42 U.S.C. § 2000e, *et seq*. and the ADA, as amended,

42 U.S.C. § 12101 *et seq.*

2.      The supplemental jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. § 1367, to consider Plaintiff's claim arising under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 *et seq*.

3.      Venue is proper in the Middle District of Pennsylvania as some or all of the events complained of herein occurred in Lackwanna County, Pennsylvania.

4.      All conditions precedent to the institution of this suit have been fulfilled.  As to the federal ADA claims, Plaintiff has invoked the procedure set forth in the ADA and has received a Notice of Right to Sue as required.   On September 24, 2015, Plaintiff filed a Charge of Discrimination with the EEOC, which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"), against Alkermes alleging, *inter alia* gender and disability-based employment discrimination, and retaliation.  On May 17, 2016, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission.

5.      This action has been filed within ninety (90) days of receipt of said Notice.

6.      More than one year has elapsed since the filing of Plaintiff's Complaint with the PHRC.

## III.  PARTIES

7.      Plaintiff, Dana Tamberelli, is an adult female citizen and resident of the Commonwealth of Pennsylvania.  Plaintiff, at all times pertinent hereto, was hired by Alkermes on or about July 6, 2010 as a Biotech Sales Representative.  Plaintiff remained employed at Alkermes until June 10, 2015.

8.      Alkermes is a corporation incorporated under the laws of Massachusetts with a

principal place of business located at 852 Winter Street, Waltham, Massachusetts.

9.       Although Alkermes has a principal place of business in Waltham, Massachusetts, Alkermes conducts significant, continuous, and systematic business in Pennsylvania and had hired Plaintiff to work from her home in Pennsylvania for such business purposes.  At all times relevant hereto, Alkermes maintained continuing employment and/or agency relationships with other individuals residing in Pennsylvania.

10.      Defendant Michael Bauer (hereinafter "Bauer") is a resident and citizen of Pennsylvania.  At all times relevant to this action, Bauer was Alkermes' Mid-Atlantic District Business Manager.  At all times relevant hereto, Bauer was an agent, servant workman and/or employee of Alkermes, acting and/or failing to act within the scope, course, and authority of his employment and his employer, Alkermes.   At all times relevant, Bauer was acting in his supervisory and/or personal capacity.

11.      Defendant Michael Brousseau (hereinafter "Brousseau") is a resident and citizen of Massachusetts.  At all times relevant to this action, Brousseau was Alkermes' Northeast Senior Regional Sales Director.  At all times relevant hereto, Brousseau was an agent, servant workman and/or employee of Alkermes, acting and/or failing to act within the scope, course, and authority of his employment and his employer, Alkermes.  At all times relevant, Brousseau was acting in his supervisory and/or personal capacity.

12.      Defendant Madeline Coffin (hereinafter "Coffin") is a resident and citizen of Massachusetts.  At all times relevant to this action, Coffin was Alkermes' Vice President of Human Resources.  At all times relevant hereto, Coffin was an agent, servant workman and/or employee of Alkermes, acting and/or failing to act within the scope, course, and authority of her employment

and her employer, Alkermes.  At all times relevant, Coffin was acting in her supervisory and/or personal capacity.

13.     At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

14.     At all times relevant herein, Plaintiff was a "person" as defined Title VII, 42 U.S.C. § 2000e(f), and the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of this Act.

15.     At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of this Act.

16.     At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of this Act.

17.     At all times relevant herein, Alkermes was an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and the ADA, 42 U.S.C. § 12111(5), and is subject to the provisions of this Act.

18.     At all times relevant herein, Alkermes was a "person" as defined by Title VII, 42 U.S.C. § 2000e(a), and the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of this Act.

19.     At all times relevant hereto, Alkermes acted by and/or failed to act by and through the conduct of their officers, managers, agents, and employees, all acting within the scope and course of their employment.

20.     At all times material hereto, Alkermes employed more than fifty employees within a seventy-five mile radius from Plaintiff's worksite.

## IV.  CAUSES OF ACTION

**TITLE VII SPECIFIC ALLEGATIONS**

21.     On or about July 6, 2010, Plaintiff was hired by Alkermes as a Biotech Sales Representative.

22.     At all times material hereto, Plaintiff performed her job in a proper and competent manner, was a dedicated and diligent employee, and had a good work record; in fact, Plaintiff received the President's Club Award in 2011 and 2013 due to her exemplary performance and was on pace to win again when she was terminated.

23.     Beginning on or about April 25, 2012, Alkermes, through Michael Bauer ("Bauer"), Alkermes' Mid-Atlantic District Business Manager and Plaintiff's direct supervisor, engaged in a discriminatory course of conduct against Plaintiff due to her gender and stereotypical view of Plaintiff as a female caregiver due to her taking a period of leave to care for an ill family member.

24.     Bauer discriminatory conduct includes but is not limited to:

    a.  Repeatedly made comments to Plaintiff about how she could not handle her job duties due to her responsibilities as a female caregiver;

    b.  Repeatedly made comments to Plaintiff about how female caregivers cannot handle Plaintiff's position;

    c.  Made offensive comments to Plaintiff about how she dressed;

    d.  Made offensive comments to Plaintiff about her weight;

    e.  Repeatedly commented that people likely believed she was his wife or girlfriend when they were in public;

    f.   Subjected Plaintiff to hyper-criticism and hyper-scrutiny about her job performance;

    g.   Denied Plaintiff raises she was qualified for; and

    h.   Issued Plaintiff an admittedly false and baseless negative performance review.

25.    On or about June 1, 2012, Plaintiff reported and complained of this aforementioned discriminatory conduct to Alkermes.  Plaintiff made this report to Michael Brousseau ("Brousseasu"), Alkermes' Northeast Senior Regional Sales Director and Bauer's direct supervisor.  At such time, Plaintiff engaged in "protected conduct" for purposes of retaliation in that she reasonably perceived that Bauer was treating her in a disparate manner due to her gender and/or gender-plus factors.

26.    Alkermes, through Brousseau, dismissed Plaintiff's complaints without investigation, took no remedial action, and required Plaintiff to continue to report to and work in close proximity to Bauer.

27.    Because Brousseau responded in this manner, Plaintiff intensified her reporting and requested to discuss Bauer's discriminatory conduct with Madeline ("Coffin"), Alkermes' Vice President of Human Resources.

28.    Alkermes denied this request and would not permit Plaintiff with the opportunity to talk to Coffin.

29.    As a result, Bauer continued to act in the aforementioned manner.  In fact, Bauer became even more hostile knowing he was reported by Plaintiff and even more emboldened knowing that nothing had been or would be done.

30.     Bauer also began to retaliate against Plaintiff for engaging in this protected conduct by falsely accusing and disciplining Plaintiff regarding alleged "tardiness" and not giving Plaintiff the opportunity to rebut these accusations and disciplinary actions even though men were afforded such opportunities.

31.     Bauer continued to act in the aforementioned manner and again falsely made false accusation against Plaintiff in May of 2014; specifically, Bauer falsely accused Plaintiff of falsifying an expense report and failing to report a patient adverse event in a timely manner.

32.     This discipline was false and manufactured as Plaintiff did not falsify any expenses reports during her employment and properly reported the adverse patient event at issue. It became clear to Plaintiff that Bauer was engaging in targeted hyper-criticism and hyper-scrutiny intended to retaliatorily oust her.

33.     Plaintiff was pressured by Bauer to sign this written warning even though she did not agree to its contentions.  In response to Plaintiff's continuous complaints, Bauer allegedly promised to recommend and support Plaintiff for a promotion.

34.     Bauer immediately backtracked on this arrangement and continued to treat Plaintiff in the aforementioned discriminatory and retaliatory manner; further, Bauer undercut Plaintiff's attempts and applications for promotions, raises, and bonuses and instead favored and advocated for male employees to receive the promotions, raises, and bonuses.

35.     On or about July 29, 2014, Plaintiff again reported Bauer's on-going and continuous discriminatory and retaliatory conduct; however, this time, Plaintiff made this report directly to Coffin.

36.     Alkermes, through Coffin, again dismissed Plaintiff's complaints without investigation, took no remedial action, and required Plaintiff to continue to report to and work in close proximity to Bauer.

37.     Further, Coffin informed Bauer that Plaintiff made these complaints.

38.     Bauer then berated Plaintiff for engaging in this protected conduct and retaliated against her by reducing her pay.

39.     Bauer then continued to act in the aforementioned manner.

40.     Plaintiff required and took ADA/FMLA protected leave from September 16, 2014 until mid-October of 2014 due to a covered disability.

41.     Upon her return, Alkermes, through Bauer, made derogatory comments to Plaintiff about her being a "problem employee", which was a clear reference to her prior complaint of gender-based discriminatory and retaliatory conduct and/or as well as to her ADA/FMLA leave.  At such time, Bauer and Alkermes realized that they could use the ADA/FMLA protected leave as a further reason to retaliate against Plaintiff.

42.     Bauer also continued to act in the previously identified discriminatory and retaliatory manner due to her gender and repeated acts of protected conduct.

43.     Plaintiff took a second period of ADA/FMLA protected leave from March 6, 2015 until June 1, 2015.

44.     Due to the aforementioned conduct, Plaintiff filed a Charge of Discrimination with the EEOC on or about June 2, 2015; Plaintiff specifically notified Alkermes of that she was filing this Charge on June 9, 2015.  This was further "protected conduct" by Plaintiff.

45.     In response to this protected conduct, Alkermes immediately placed Plaintiff on administrative leave and terminated her employment the very next day, June 10, 2015.

46.     Alkermes stated reason for termination was that it received a customer complaint about Plainttiff and it "lost confidence in her".

47.     These reasons as false, manufactured, and pretextual as Plaintiff was not working and out on ADA/FMLA protected leave when the customer complaint was made and Plaintiff was performing her duties in an exemplary manner, on pace to exceed her sales goal, and qualify for a third President's Club Award.

48.     Alkermes' stated reasons for termination were an attempt to conceal its discriminatory animus and retaliate against her for repeatedly engaging in protected conduct.

49.     Alkermes was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

50.     As a direct result of the discriminatory and retaliatory conduct by Alkermes' supervisory employees, Plaintiff was deprived of her employment with Alkermes.

51.     As a direct result of Alkermes' conduct, Plaintiff has been irrevocably damaged.

52.     As a direct result of Alkermes' conduct, Plaintiff has suffered and continues to suffer severe emotional, psychological, and physical distress.

53.     As a direct result of Alkermes' conduct, Plaintiff's career, professional, and job opportunities have been impaired and damaged and she has suffered a loss of earnings and earning capacity.

**ADA/FMLA SPECIFIC ALLEGATIONS**

54.     On or about July 6, 2010, Plaintiff was hired by Alkermes as a Biotech Sales Representative.

55.     At all times material hereto, Plaintiff performed her job in a proper and competent manner, was a dedicated and diligent employee, and had a good work record; in fact, Plaintiff received the President's Club Award in 2011 and 2013 due to her exemplary performance.

56.     In September of 2014, Plaintiff was diagnosed with a serious medical condition and disability, the identity of which is omitted from this Complaint because of privacy concerns with medical diagnoses, but which was expressly made known to Alkermes by Plaintiff.

57.     Plaintiff's serious medical condition is a disability as that term is defined by the ADA, as amended by the ADAA, because it substantially limited her in one or more major life activity, including but not limited to performing manual tasks, walking, standing, lifting, bending, and working.

58.     Upon learning of this diagnosis, Plaintiff specifically notified Alkermes of this diagnosis and requested ADA/FMLA leave for surgical treatment and recovery for 12 weeks beginning on September 17, 2014.

59.     Alkermes purported to grant this request but waited until September 16, 2014, the day before Plaintiff's surgery, to do so and repeatedly questioned Plaintiff about her need for leave.

60.     Although Alkermes purported to grant this leave, Bauer continuously and illegally demanded that Plaintiff return to work; Bauer made the first request for her to return the day after her surgery.

10

61.     Because Plaintiff could not return to work immediately after her surgery as demanded by Bauer, Alkermes, through Bauer, made another false accusation againt Plaintiff by falsely accusing her of disclosing confidential information while she was on ADA/FMLA protected leave.

62.     This accusation was false and baseless as Plaintiff was not working while on ADA/FMLA protected leave and did not interact with anyone whom she would disclose any such information to.

63.     Due to the constant pressure from Alkermes to return to work early without taking the full leave prescribed by her doctor, Plaintiff returned to work in mid-October of 2014.

64.     Alkermes refused to provide Plaintiff with any information on their policies and procedures regarding medical leave, her ADA rights, and her FMLA rights when she returned to work.

65.     Instead of doing so, Alkermes, through Bauer, made derogatory comments to Plaintiff about her being a "problem employee", which was a clear reference to her disability and/or prior protected conduct, need for ADA/FMLA leave, and requests for information regarding her rights.

66.     Bauer also treated Plaintiff in a disparate manner by berating her for false, baseless, and manufactured reasons, subjected Plaintiff to hyper-criticism and hyper-scrutiny, and denied her all opportunities for raises and promotions.

67.     As a result of this conduct, Plaintiff was diagnosed with a second serious medical condition and disability in March of 2014, the identity of which is omitted from this Complaint because of privacy concerns with medical diagnoses, but which was expressly made known to

Alkermes by Plaintiff.

68.     Plaintiff's second serious medical condition is a disability as that term is defined by the ADA, as amended by the ADAA, because it substantially limited her in one or more major life activity, including but not limited to reading, concentrating, interacting with others, communicating, working, and thinking.

69.     Upon learning of this diagnosis, Plaintiff specifically notified Alkermes of this diagnosis and requested ADA/FMLA leave for treatment from March 6, 2015 to June 1, 2015.

70.     Alkermes again purported to grant this request for leave.

71.     However, while on this leave, Alkermes threatened to terminate Plaintiff's employment on numerous occasions for failing to communicating with them.

72.     This was a manufactured and prextexual threat as such communication was not necessary since she was not working while on said leave and Alkermes had specific notice of when she would return to work.

73.     Prior to her return on June 1, 2015, Plaintiff requested an accommodation in the form of light duty for one week from June 1, 2015 until June 8, 2015.  After the one week period, Plaintiff would not need any accommodations.

74.     Alkermes ignored this request for accommodation, did not respond in any way, and did not engage in the ADA mandated interactive process.

75.     On June 1, 2015, Plaintiff returned to work without light duty or any other accommodations because Alkermes refused to respond to her request.

76.     Due to the aforementioned conduct, Plaintiff filed a Complaint with the EEOC on or about June 2, 2016 and specifically notified Alkermes of this Complaint on June 9, 2015.

77.     In response to this protected conduct, Alkermes immediately placed Plaintiff on administrative leave and terminated her employment the very next day, June 10, 2015.

78.     Alkermes stated reason for termination was that it received a customer complaint about Plainttiff and it "lost confidence in her".

79.     These reasons as false, manufactured, and pretextual as Plaintiff was not working and out on ADA/FMLA protected leave when the customer complaint was made and Plaintiff was performing her duties in an exemplary manner, on pace to exceed her sales goal, and qualify for a third President's Club Award.

80.     Alkermes' stated reasons for termination were an attempt to conceal its discriminatory animus and refuse to provide her with any future accommodations for leave and retaliate against her for taking ADA/FMLA leave, requesting a reasonable accommodation, and engaging in protected conduct.

81.     Alkermes was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

82.     As a direct result of the discriminatory and retaliatory conduct by Alkermes' supervisory employees, Plaintiff was deprived of her employment with Alkermes.

83.     As a direct result of Alkermes' conduct, Plaintiff has been irrevocably damaged.

84.     As a direct result of Alkermes' conduct, Plaintiff has suffered and continues to suffer severe emotional, psychological, and physical distress.

85.     As a direct result of Alkermes' conduct, Plaintiff's career, professional, and job opportunities have been impaired and damaged and she has suffered a loss of earnings and earning

capacity.

**COUNT I**
**PLAINTIFF v. ALKERMES**
**<u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AND 1991</u>**

86.     Paragraphs 1 through 85, inclusive, are incorporated by reference as if fully set forth at length herein.

87.     Based on the foregoing, Alkermes has engaged in unlawful practices in violation of Title VII.  The said unlawful practices for which Alkermes is liable to Plaintiff include, but are not limited to, gender and gender-plus discrimination, fostering and perpetuating a hostile and offensive work environment, retaliating against her because of her expressed opposition to offensive gender related conduct in the work place, subjecting her to more onerous working conditions, and treating her in a disparate manner.

88.     As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Alkermes in violation of Title VII, Plaintiff sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, plus back pay, front pay and interest due thereon.

**COUNT II**
**PLAINTIFF v. ALKERMES**
**<u>RETALIATION UNDER TITLE VII</u>**

89.     Paragraphs 1 through 88, inclusive, are incorporated by reference as if fully set forth at length herein.

90.     By the acts complained of, Alkermes has retaliated against Plaintiff for exercising her rights under Title VII, which constitutes a violation of Title VII.

91.     Alkermes' foregoing continued adverse employment actions and violations,

including retaliation against Plaintiff under circumstances giving rise to an inference of discrimination and retaliation, were taken without valid and just cause.

92.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Alkermes' retaliatory practices unless and until this Court grants relief.

**COUNT III**
**PLAINTIFF v. ALKERMES**
**NEGLIGENCE UNDER TITLE VII**

93.    Paragraphs 1 through 92, inclusive, are incorporated by reference as if fully set forth at length herein.

94.    Alkermes was negligent in the following respects:

a.   Failing to implement an effective, well-known and uniformly enforced policy against gender-based harassment, gender-based discrimination, and retaliation;

b.   Failing to properly investigate Plaintiff's complaints of gender-based harassment, gender-based discrimination, and retaliation;

c.   Failing to take any action reasonably calculated to remedy Plaintiff's complaints of gender-based harassment, gender-based discrimination, and retaliation;

d.   Failing to impose any discipline upon their employees who had engaged in gender-based harassment, gender-based discrimination, and retaliation;

e.   Failing to take reasonable actions to discover illegal gender-based harassment, gender-based discrimination, and retaliation by their employees; and

f.   Failing to take reasonable actions to prevent illegal gender-based harassment,

15

gender-based discrimination, and retaliation from taking place.

95.     Alkermes owed Plaintiff a duty in all of the respects set forth in Paragraph 94, but failed to perform each of those duties as set forth above.

96.     As a direct, reasonable and foreseeable result of the negligence of Alkermes, Plaintiff suffered the injuries and damages set forth above.

**COUNT IV**
**PLAINTIFF v. ALKERMES**
**VIOLATION OF THE ADA**

97.     Paragraphs 1 through 96, inclusive, are incorporated by reference as if fully set forth at length herein.

98.     At all times relevant herein, Plaintiff was disabled, regarded as, and/or perceived as disabled by Alkermes.

99.     Plaintiff was able to perform all of the essential functions of her position with or without accommodation.

100.     By reason of the conduct set forth above, Alkermes intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

101.     By its actions and inactions through its agents, servants, and representatives, Alkermes created, maintained, and permitted to be maintained a work environment, which was hostile to persons such as Plaintiff who have a record of or are perceived as having a disability.

102.     As a direct result of Plaintiff's disability and/or request for leave and/or accommodation, Alkermes terminated Plaintiff's employment.

103.     Alkermes' aforesaid actions were outrageous, egregious, malicious, intentional,

16

willful, wanton, and in reckless disregard of Plaintiff's rights.

## COUNT V
## PLAINTIFF v. ALKERMES
## RETALIATION UNDER THE ADA

104.    Paragraphs 1 through 103, inclusive, are incorporated by reference as if fully set forth at length herein.

105.    By the acts complained of, Alkermes has retaliated against Plaintiff for exercising her rights under the ADA, namely requesting and/or using a reasonable accommodation in the form of leave for treatment, and in engaging in the protected conduct of informing Alkermes she was going to file a Charge of Discrimination with the EEOC in violation of the Act.

106.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Alkermes' retaliatory practices unless and until this Court grants relief.

## COUNT VI
## PLAINTIFF v. ALKERMES
## DISCRIMINATION AND RETALIATION IN VIOLATION OF THE PHRA

107.    Paragraphs 1 through 106 inclusive, are incorporated by reference as if fully set forth at length herein.

108.    The unlawful actions of Alkermes acting as aforesaid, constitutes a violation of Title 43 Pa. Stat. Ann. § 951 *et seq*. of the Pennsylvania Human Relations Act.  The said unlawful practices for which Alkermes is liable to Plaintiff include, but are not limited to, fostering and perpetuating a hostile and offensive work environment, discriminating against Plaintiff due to her gender, disability, and/or for exercising her rights under the Pennsylvania Human Relations Act in violation of said act, subjecting Plaintiff to more onerous working

conditions, and treating Plaintiff in a disparate manner; and actionable retaliation due to her engaging in protected conduct under the PHRA.

109.    As a direct result of Alkermes' willful and unlawful actions in treating Plaintiff in a discriminatory and retaliatory manner solely because of her gender, disability, and/or for exercising her rights under said act, Plaintiff has sustained severe emotional distress, loss of earnings, plus the failure of the aforementioned benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

**COUNT VII**
**PLAINTIFF v. BAUER, BROUSSEAU, and COFFIN**
**AIDING AND ABETTING AGE DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF THE PHRA**

110.    Paragraphs 1 through 109 inclusive, are incorporated by reference as if fully set forth at length herein.

111.    The unlawful actions of Bauer, Brousseau, and Coffin acting as aforesaid, constitute a violation of Title 43 Pa. Stat. Ann. § 951 *et seq*. of the Pennsylvania Human Relations Act.

112.    The said unlawful practices for which Bauer, Brousseau, and Coffin are liable to Plaintiff include, but are not limited to fostering and perpetuating a hostile and offensive work environment, discriminating and retaliating against Plaintiff due to her gender, disability, and/or for exercising her rights under said act, subjecting Plaintiff to more onerous working conditions, and treating Plaintiff in a disparate manner.

113.    At all relevant times herein, Bauer, Brousseau, and Coffin knew, or had reason to know of the actions and inaction alleged herein and/or have personally participated in some of said actions and are ultimately responsible for same, and aided and abetted the illegal conduct of

Alkermes.

114.     Bauer, Brousseau, and Coffin, as Plaintiff's supervisors, are personally liable

pursuant to the Pennsylvania Human Relations Act for aiding and abetting the unlawful conduct

set forth herein.

115.     As a direct result of Bauer, Brousseau, and Coffin's willful and unlawful actions

in aiding and abetting in the discrimination and retaliation set forth herein in violation of Title 43

Pa. Stat. Ann. § 951 *et seq.* of the Pennsylvania Human Relations Act, Plaintiff has sustained,

severe emotional distress, loss of earnings, plus the failure of the aforementioned benefits, plus

loss of future earning power, plus back pay, front pay and interest due thereon.

**STATEMENT OF FACTS JUSTIFYING**
**THE IMPOSITION OF PUNITIVE AND LIQUIDATED DAMAGES**
**UNDER TITLE VII ,THE ADA, AND THE PHRA**

116.     Paragraphs 1 through 115, inclusive, are incorporated by reference as if fully set

forth at length herein.

117.     At all times relevant hereto, Alkermes knew or should have known of the pattern

of conduct in which its principals, employees, and agents had engaged and in which they continued

to engage.

118.     At all times relevant hereto, Alkermes knew or should have known that the

aforesaid pattern of conduct was in violation of law and Alkermes' stated policies and terms of

employment.

119.     Despite such knowledge, Alkermes failed to adequately investigate, discipline, or

discharges its agents, servants, and representatives who discriminated against Plaintiff and created

a hostile work environment.

120.    Alkermes failed and refused to properly protest and support Plaintiff and in fact subjected or permitted her to be subjected to discrimination and retaliation.

121.    At all times relevant hereto, Alkermes, acted willfully, wantonly, recklessly, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated.

## V.  <u>PRAYER FOR RELIEF</u>

122.    Paragraphs 1 through 121, inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff respectfully requests the Court to:

    a.   Exercise jurisdiction over her claim;

    b.   Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

    c.   Award compensatory damages, including but not limited to reimbursement of all medical and psychological expenses; back pay and future earnings and loss of earning capacity in the amount of wages and benefits; damages for Plaintiff's mental, psychological, and emotional injuries, anguish, humiliation, anxiety, physical and mental pain, and suffering and loss of life's pleasures, all of which may be permanent, together with interest, resulting from Alkermes' discriminatory and unlawful conduct;

    d.   Reinstate Plaintiff to her former position together with back pay and compensatory damages;

    e.   Award punitive and/or liquidated damages as may be permitted under law;

    f.   Award Plaintiff attorneys' fees and costs; and

    g.   Grant such other relief, as the Court deems just and equitable.

## VI.  **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

HAHALIS & KOUNOUPIS, P.C.

By:_/s/ *George S. Kounoupis*_____
GEORGE S. KOUNOUPIS, ESQUIRE
20 East Broad Street
Bethlehem, PA  18018
(610) 865-2608
Attorneys for Plaintiff

Date:  January 5, 2017