## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| DANA TAMBERELLI, | : | |
| | : | No. 3:16-cv-01681-RDM |
| Plaintiff, | : | |
| v. | : | Hon. Robert D. Mariani |
| | : | |
| ALKERMES, INC., MICHAEL | : | **Oral Argument Requested** |
| BAUER, MICHAEL BROUSSEAU, | : | |
| and MADELINE COFFIN, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .............................................................................1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .....................1

III.    STATEMENT OF QUESTION INVOLVED..............................................4

IV.    ARGUMENT..................................................................................4

V.    CONCLUSION...............................................................................9

# TABLE OF AUTHORITIES

**PAGE**

*Bayer v. CitiMortgage, Inc.*,
  Civ. A. No. 11-02105, 2014 WL 4187556 (M.D. Pa. Aug. 22,
  2014) ...................................................................................................5, 6

*D.R. by M.R. v. East Brunswick Bd. of Educ.*,
  109 F.3d 896 (3d Cir. 1997) ...................................................................6

*Friia v. Friia*,
  780 A.2d 664 (Pa. Super. Ct. 2001).........................................................4

*Giambra v. Storch*,
  Civ. A. No. 14-1084, 2015 WL 3651688 (M.D. Pa. June 11, 2015) ...................5

*Green v. John H. Lewis & Co.*,
  436 F.2d 389 (3d. Cir. 1970) ...................................................................5

*Lakkis v. Lahovski*,
  Civ. A. No. 12-1024, 2016 WL 4059672 (M.D. Pa. July 27, 2016)
  (Mariani, J.)..........................................................................................4, 6

*McCune v. First Judicial Dist. of Pa.*,
  99 F. Supp. 2d 565 (E.D. Pa. 2000).........................................................6

*McDonnell v. Engine Distribs.*,
  Civ. A. No. 03-1999, 2007 WL 2814628 (D.N.J. Sept. 24, 2007)......................5

*M.R. v. East Brunswick Bd. of Educ.*,
  109 F.3d 896, 901 (3d Cir. 1997) ...........................................................6

*Pisarz v. PPL Corp.*,
  No. 10-01432, 2014 WL 220778 (M.D. Pa. Jan. 21, 2014), *aff'd*,
  604 F. App'x 196 (3d Cir. 2015) ...........................................................6

*Polzer v. Allegheny Cnty.*,
  599 F. App'x 425 (3d Cir. 2015) ...........................................................6

*Reutzel v. Douglas*,
  870 A.2d 787 (Pa. 2005)..........................................................................6

*Shell's Disposal & Recycling, Inc. v. City of Lancaster*,
  504 F. App'x 194 (3d Cir. 2012) ..........................................................................5

*Williams v. Metzler*,
  132 F.3d 937 (3d Cir. 1997) ...............................................................................4

*Yarnall v. Almy*,
  703 A.2d 535 (Pa. Super. Ct. 1997).....................................................................4

## I.      INTRODUCTION

On June 5, 2017, Plaintiff's counsel David Deratzian accepted, on his client's behalf, Defendants' settlement offer in this case.  At the time he accepted the offer, Mr. Deratzian had express authority from his client to do so. Accordingly, the Court should enforce the binding settlement agreement the parties reached.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this lawsuit against her former employer Alkermes, Inc. on August 12, 2016.  *See* ECF 1.  On January 12, 2017, Plaintiff filed an Amended Complaint, adding Michael Bauer, Michael Brousseau, and Madeline Coffin as defendants.  *See* ECF 21.  Plaintiff asserts claims under Title VII, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act.  *See id.*

To date, the parties have completed significant discovery.  (Exhibit A, Decl. of B. Rigo ¶ 3.)  Defendants have produced nearly 10,000 pages of documents, including electronically-stored information, Plaintiff has produced over 800 pages of documents, and the parties have exchanged answers to interrogatories.  *Id.* ¶ 4. By late May 2017, the parties agreed to conduct Plaintiff's deposition on June 6, 2017, and Mr. Bauer's deposition on June 9, 2017.  *Id.* ¶ 5.

On June 2, 2017, Mr. Deratzian sent an email to counsel for Defendants expressing an interest in discussing settlement prior to Plaintiff's scheduled June 6 deposition.  (Exhibit A ¶ 6; Exhibit B, Decl. of D. Deratzian ¶ 4.)  Ms. Rigo spoke with Mr. Deratzian by telephone that afternoon, and settlement negotiations resumed.[1]  (Exhibit A ¶ 7; Exhibit B ¶ 5.)

On June 5, 2017, Ms. Rigo and Mr. Deratzian spoke on the phone several times, further negotiating settlement.  (Exhibit A ¶ 8; Exhibit B ¶ 6.)  Plaintiff was present in Mr. Deratzian's law offices at the time Mr. Deratzian and Ms. Rigo spoke that day in anticipation of her deposition the following day, and Plaintiff participated in the settlement discussion outside of Ms. Rigo's presence.  (Exhibit B ¶¶ 6-7.)

On the third call between Mr. Deratzian and Ms. Rigo on the afternoon of June 5, Mr. Deratzian accepted, on Plaintiff's behalf, Defendants' offer to settle the case.  (Exhibit A ¶ 9; Exhibit B ¶ 8.)  At the time he accepted Defendants' settlement offer on Plaintiff's behalf, Mr. Deratzian had express authority from her to do so.  (Exhibit B ¶ 9.)  That is, Plaintiff directly instructed Mr. Deratzian to accept the settlement offer in the amount and on the terms proposed by Ms. Rigo. *Id.*  Had Mr. Deratzian not had express authority from Plaintiff, he would not have accepted Defendants' offer on her behalf.  *Id.* ¶ 10.  In fact, at the time Mr.

---

[1] The parties discussed settlement early in the case, but, given Plaintiff's unrealistic initial settlement demand, discussions halted shortly thereafter.

Deratzian accepted Defendants' offer, he specifically told Ms. Rigo that he had express authority from his client to settle the case so that there would be no question that the negotiations had ended in a settlement on mutually agreed terms.[2] (Exhibit A ¶ 10; Exhibit B ¶ 11.)

During their June 5 discussion, Mr. Deratzian and Ms. Rigo reached agreement not only on the settlement amount, but on other specific terms to be included in the parties' written settlement agreement.  (Exhibit A ¶ 11; Exhibit B ¶ 12.)  They also agreed that the parties would work out any other non-essential specifics upon review of a written draft agreement.  (Exhibit B ¶ 12.)  They further agreed that, due to the settlement, Plaintiff's deposition scheduled for June 6 would be cancelled.  (Exhibit A ¶ 12.)  Ms. Rigo followed up their June 5 phone call with an email to Mr. Deratzian, confirming that the parties had reached a mutually agreed-upon settlement.  (Exhibit A ¶ 13; Exhibit B ¶ 13.)

On June 6, 2017, Plaintiff showed up at Defendants' counsel's office for her deposition.  (Exhibit A ¶ 14.)  Ms. Rigo informed Mr. Deratzian that Plaintiff had appeared for her deposition.  *Id.* ¶ 15.  Mr. Deratzian told Ms. Rigo that he was

---

[2] Additional facts exist further confirming that Mr. Deratzian had actual and express authority from Plaintiff to settle this case.  (Exhibit B ¶ 16.)  These facts are currently protected from disclosure by the attorney-client privilege and/or as work product, but could be disclosed to the Court in the event of waiver by Plaintiff and/or order of the Court.  *Id.*

experiencing some difficulties with his client, but that she had agreed to settle the case the previous day and that he had express authority from her to do so.  *Id.* ¶ 15.

On June 12, 2017, Mr. Deratzian emailed Ms. Rigo requesting that she send him the written settlement agreement.  *Id.* ¶ 16.  On June 15, 2017, Mr. Deratzian informed Ms. Rigo by email that he had been discharged by Plaintiff.  *Id.* ¶ 17. Plaintiff filed a motion with the Court seeking a continuance of proceedings while she seeks new counsel.  ECF 29.

## III.   STATEMENT OF QUESTION INVOLVED

Should the settlement reached by the parties on June 5, 2017, be enforced where a binding settlement contract between the parties was formed and Mr. Deratzian had express authority from his client to enter into the contract at the time it was formed?

Suggested Answer:  Yes.

## IV.   ARGUMENT

Settlement agreements are interpreted and enforced pursuant to general rules of contract interpretation and contract law.  *Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997); *Friia v. Friia,* 780 A.2d 664, 668 (Pa. Super. Ct. 2001).   Under Pennsylvania law, the essential elements of a contract are an offer, acceptance, and consideration or a mutual meeting of the minds.  *Yarnall v. Almy*, 703 A.2d 535, 538 (Pa. Super. Ct. 1997); *Lakkis v. Lahovski*, Civ. A. No. 12-1024, 2016 WL

4059672, at *2 (M.D. Pa. July 27, 2016) (Mariani, J.).   "[T]he test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 F. App'x 194, 200 (3d Cir. 2012).

Settlement agreements are binding on parties "whether or not made in the presence of the court, and even in the absence of writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d. Cir. 1970); *see Bayer v. CitiMortgage, Inc.*, Civ. A. No. 11-02105, 2014 WL 4187556, at *2 (M.D. Pa. Aug. 22, 2014) ("An oral settlement agreement may be enforceable and legally binding without a writing."). If the parties agree upon essential terms of settlement and intend them to be binding, a settlement contract is formed even though they intend to adopt a formal document with additional terms at a later date. *Bayer*, 2014 WL 4187556, at *2; *cf. McDonnell v. Engine Distribs.*, Civ. A. No. 03-1999, 2007 WL 2814628, at **6-8 (D.N.J. Sept. 24, 2007) (enforcing oral settlement agreement where parties agreed only on amount of settlement and non-disparagement and non-disclosure clauses).   Significantly, "[a] settlement agreement is still binding even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing." *Giambra v. Storch*, Civ. A. No. 14-1084, 2015 WL 3651688, at *3 (M.D. Pa. June 11, 2015).

There is a strong public policy in favor of enforcing settlement agreements because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997); *see also Bayer*, 2014 WL 4187556, at *3 ("Permitting parties to void settlement agreements on a whim, because the agreement becomes unpalatable or the parties become greedier, would work a significant deterrence contrary to the federal policy of encouraging settlement agreements."). A trial court has jurisdiction to enforce a settlement agreement entered into by parties before it. *McCune v. First Judicial Dist. of Pa.*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000).

Under Pennsylvania law, an attorney must have express authority to bind a client to a settlement agreement. *Reutzel v. Douglas,* 870 A.2d 787, 789-90 (Pa. 2005). Express authority empowering an attorney to settle a client's claim "must be the result of explicit instructions regarding settlement." *Pisarz v. PPL Corp.*, No. 10-01432, 2014 WL 220778, at *1 (M.D. Pa. Jan. 21, 2014), *aff'd*, 604 F. App'x 196 (3d Cir. 2015); *see also Lakkis*, 2016 WL 4059672, at *3 (explaining that express authority exists "where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf") (quoting *Polzer v. Allegheny Cnty.*, 599 F. App'x 425, 426-27 (3d Cir. 2015)).

Here, the evidence clearly establishes that the parties entered into a valid and binding oral settlement agreement.  On June 5, 2017, after engaging in several settlement discussions, Ms. Rigo made a settlement offer to Plaintiff on Defendant's behalf, and Mr. Deratzian accepted that offer on Plaintiff's behalf. (Exhibit A ¶¶ 7-9; Exhibit B ¶¶ 6-9.)  Ms. Rigo and Mr. Deratzian agreed on the essential terms of the settlement, which included not only the settlement amount, but other specific terms to be included in the written agreement.  (Exhibit A ¶ 11; Exhibit B ¶ 12.)  They agreed to work out any other non-essential specifics upon review of a written draft agreement.  (Exhibit B ¶ 12.)  Whether the agreement was reduced to writing is immaterial.

Further, no issue of material fact exists whether Mr. Deratzian had express authority from Plaintiff to accept Defendants' settlement offer.  *Id.* ¶¶ 9-10. Plaintiff was present in Mr. Deratzian's office when she directly instructed him to accept the settlement offer in the amount and on the specific terms proposed by Ms. Rigo.  *Id.* ¶¶ 6-10.  If Plaintiff was unsatisfied with the terms of Defendants' settlement offer, she was free to reject it when it was proposed.  However, she did not.  To the contrary, she gave Mr. Deratzian direct instructions to accept the offer, which he did on her behalf.  *Id.* ¶ 9.  Mr. Deratzian, who has been practicing law and negotiating settlements on behalf of clients for nearly thirty years, would not

have accepted Defendants' settlement offer on Plaintiff's behalf had he not had express authority from her to do so. *Id.* ¶ 10.

Mr. Deratzian's express authority to settle on Plaintiff's behalf is further evidenced by the fact that he specifically told Ms. Rigo that he had express authority to settle at the time he accepted Defendants' offer. (Exhibit A ¶ 10; Exhibit B ¶ 11.) He stated this to Ms. Rigo so there would be no question settlement was reached on terms mutually agreed upon by the parties. (Exhibit B 11.) Additionally, after she got off the phone with him, Ms. Rigo sent Mr. Deratzian an email confirming the settlement reached, and the parties agreed to cancel Plaintiff's deposition scheduled for the following day. (Exhibit A ¶¶ 12, 13; Exhibit B ¶ 13.) Less than a week later, Mr. Deratzian emailed Ms. Rigo requesting that she send him a written draft settlement agreement. (Exhibit A ¶ 16; Exhibit B ¶ 14.)

As the evidence unmistakably shows, Plaintiff gave Mr. Deratzian express authority to accept Defendants' settlement offer on her behalf. That Plaintiff apparently changed her mind after the fact does not affect the binding nature of the parties' agreement. Considering the strong judicial policy in favor of enforcing settlement agreements and the undisputed evidence supporting a finding that the parties entered into a binding contract, the Court should enforce the parties' agreement and dismiss this case.

## V.    CONCLUSION

For the foregoing reasons, the parties' settlement agreement should be enforced and this case dismissed as settled.

s/ Paul J. Sopher
Barbara Rittinger Rigo (PA 76630)
Paul J. Sopher (PA 313543)
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000 (t)
brigo@littler.com
psopher@littler.com

June 23, 2017                      Attorneys for Defendants