IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA TAMBERELLI,<br>　　　　　Plaintiff,<br>　　v.<br><br>ALKERMES, INC.,　MICHAEL BAUER,<br>MICHAEL BROUSSEAU, and MADELINE<br>COFFIN,<br>　　　　　Defendants. | CIVIL ACTION<br><br>No. 3:16-cv-01681-RDM |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO ENFORCE SETTLEMENT AND TO THE MOTION TO INTERVENE
BY GEORGE S. KOUNOUPIS, ESQUIRE AND HAHALIS & KOUNOUPIS, P.C.**

**I.   INTRODUCTION**

Plaintiff filed the within lawsuit against her former employer, Alkermes, Inc., on or about August 12, 2016, by and through her then counsel, Hahalis & Kounoupis, P.C. ("H&K"). Plaintiff's Complaint asserts claims under Title VII, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act.  On or about January 12, 2017, Plaintiff filed an Amended Complaint asserting the same claims but naming three additional individual Defendants.

The parties exchanged paper discovery in or about mid-May 2017, and Plaintiff's deposition was scheduled for June 6, 2017. (Rigo Declaration at ¶¶ 3-5). As a result of a meeting on June 5, 2017 in which Plaintiff was scheduled to prepare for her deposition, her former attorneys, H&K, purported to settle Plaintiff's claims on her behalf. Plaintiff did not agree to the settlement and therefore, appeared for her deposition on June 6, 2017 as scheduled.

Defendants now move this Court to enforce a settlement to which Plaintiff did not agree. (Docket 31).  Further, Mr. Kounoupis and H&K move to intervene for the purpose of enforcing the settlement, having withdrawn as counsel for Plaintiff. (Docket 34). Plaintiff submits this brief in opposition to both Motions.

1

**II.      LEGAL ARGUMENT**

   *A.      Defendant's Motion to Enforce Settlement Should Be Denied.*

There can be no settlement in this matter because the facts viewed in the light most favorable to Plaintiff demonstrate that no settlement was reached, and thus, one cannot be recognized as a matter of law.  Courts evaluate a motion to enforce settlement under the same standard as a motion for summary judgment, "because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement." Dugan v. O'Hara, 125 F. Supp. 3d 527, 535 (E.D. Pa. 2015) (citing Washington v. Klem, 388 Fed. Appx. 84, 85 (3d Cir. 2010)). Both a motion to enforce settlement and a motion for summary judgment seek to deprive a party of his right to be heard in litigation. Tiernan v. DeVoe, 923 F.2d 1024, 1031 (3d Cir. 1991).

To this end, in reviewing a motion to enforce settlement:  (1) "the non-movant's assertions must be treated as true; (2) the non-movant must be given the benefit of the doubt when their assertions conflict with the movant's assertions; and (3) the movant must be entitled to enforcement as a matter of law." Dugan, supra, 125 F. Supp. 3d at 535. (quoting Roberts Enterprises, LP v. Fun Sport, Inc., No. 06–490, 2008 WL 10712416 (D. Del. Mar. 7, 2008)). In meeting this burden, the non-moving party must provide evidentiary support for any assertions on which it wishes to rely in opposing the motion to enforce settlement. Id. Cf. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

"The validity and enforceability of settlement agreements is governed by state contract law." Shell's Disposal & Recycling, Inc. v. City of Lancaster, 504 Fed. Appx. 194, 200 (3d Cir.

2012). The test for enforceability of a settlement agreement is "whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.'" Calif. Sun Tanning USA, Inc. v. Elec. Beach, Inc., 369 Fed. Appx. 340, 346 (3d Cir. 2010) (quoting Channel Home Ctrs. v. Grossman, 795 F.2d 291, 298–99 (3d Cir. 1986)).

All elements that would ordinarily be associated with a valid and enforceable contract must be present in order for a settlement agreement to be valid. This includes a meeting of the minds of all the parties on all terms and the subject matter of the agreement. Mazzella v. Koken, 559 Pa. 216, 224, 739 A.2d 531, 536 (1999) (quoting Onyx Oils & Resins, Inc. v. Moss, 367 Pa. 416, 420, 80 A.2d 815, 817 (1951)).

The court must examine the parties' "outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions." Dugan, supra, 125 F. Supp. 3d at 535-536 (quoting Espenshade v. Espenshade, 729 A.2d 1239, 1243 (Pa. Super. Ct. 1999)). If an agreement to settle a lawsuit is voluntarily entered into, it is binding upon the parties, even if the agreement is not reduced to writing or not made in the presence of the court. Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970). "If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside." Mazzella v. Koken, 739 A.2d at 536 (internal citation omitted).

In the present matter, accepting as true the assertions of Plaintiff, the purported settlement cannot be enforced, as there was no meeting of the minds and Plaintiff did **NOT** authorize H&K to accept any settlement on her behalf. (See Plaintiff's Declaration).

First, the Declaration of Plaintiff makes clear that she did not accept any settlement. Although Plaintiff did agree to engage in settlement discussions that day, Plaintiff never authorized acceptance of any offer conveyed to her. (Declaration of Plaintiff at ¶¶ 19-24). While Plaintiff told David Deratzian, Esquire of H&K that she would sign the appropriate paperwork IF a settlement was reached, none was ever reached. (Id. at ¶ 21). As such, when Plaintiff left Mr. Deratzian's office without reaching a settlement, she emailed him to confirm she was not signing anything because no settlement had been reached. (**Exhibit "A"** to Declaration of Plaintiff).

Second, when Plaintiff went to meet with Mr. Deratzian to prepare for her deposition, Mr. Deratzian essentially told her that he had lost faith in her case and was pushing her toward settlement based upon documents – specifically emails – that Defendants produced forming the basis for their purported legitimate business reason for Plaintiff's termination. (Declaration of Plaintiff at ¶¶ 11, 16, 22). However, the very emails upon which Mr. Deratzian relied in telling Plaintiff she had no chance of winning her case before a jury were the same emails Plaintiff provided to H&K at the time H&K agreed to take her case, and well in advance of June 5, 2017. As such, it does not make sense that those emails would all of a sudden have new meaning or weight. (Id. at ¶ 22). Instead it appears that H&K was pushing Plaintiff toward settlement because of Plaintiff's inability to advance litigation costs, of which she was advised only weeks before her deposition. (Id. at ¶¶ 9, 12, 15).

Third, Defendants' excuse for not returning Plaintiff's phone calls or responding to her emails Plaintiff left after the June 5th meeting to confirm that no settlement had been reached and that she would be at her deposition the next day, was that everyone had left the office prior to Plaintiff's calls and emails on June 5, 2017. (**Exhibit "D"** to Declaration of Plaintiff). It strains credulity that no H&K staff was there after 4 pm to answer Plaintiff's phone calls, and that Mr.

Deratzian did not check his email from 4 pm on June 5, 2017, until the morning of June 6, 2017. The facts as set forth in Defendants' moving papers viewed in the light most favorable to Plaintiff suggest that Defendants simply ignored and/or avoided Plaintiff's phone calls and emails to further pressure Plaintiff into accepting a settlement.

Fourth, the exhibits provided by defense counsel in support of the Motion further demonstrate there was no mutual assent or meeting of the minds. In fact, Mr. Deratzian's June 14, 2017 email to Ms. Rigo requests that she send a settlement agreement because "hope springs eternal." (Exhibit 3 to Rigo Declaration). This language strongly suggests that Mr. Deratzian was still trying to convince or strongarm Plaintiff into accepting a settlement, not that one had already been reached and agreed upon by the parties.

Fifth, it is well settled that an attorney must have express authority from the client to settle the case. See, e.g., Archbishop v. Karlak, 450 Pa. 535 (1973). The Declaration of Barbara Rigo, Esquire states that Mr. Deratzian told her to write down that he had the express authority of Plaintiff to settle the case. (Rigo Declaration at ¶ 10). The fact that Mr. Deratzian made that specific request is conduct that once again calls into question the validity of any purported settlement, and whether Mr. Deratzian did, in fact, have settlement authority. Typically when an attorney indicates to opposing counsel that a settlement has been reached, it is implied that the attorney has his client's express authority to do so. Mr. Deratzian's statement to Ms. Rigo combined with his voluntarily providing a Declaration in support of Defendants' Motion, and H&K making it known to Plaintiff that Mr. Deratzian had a longstanding relationship with Ms. Rigo, (Declaration of Plaintiff at ¶ 5), also raises concerns over whether Mr. Deratzian was working with defense counsel rather than protecting his client's interests.

Based on the foregoing, viewed in the light most favorable to Plaintiff, no settlement was reached because there was no meeting of the minds as to the essential terms of the agreement. Giving Plaintiff the benefit of the doubt, Dugan, supra, 125 F. Supp. 3d at 535, she never agreed to settle her case against Defendants, and her outward manifestations were not of assent to a settlement, (**Exhibit "A"** to Declaration of Plaintiff). Therefore, Defendants' Motion to Enforce Settlement should be DENIED and a schedule set for the completion of discovery in this matter.

### B. *Kounoupis and H&K's Motion to Intervene Should Be Denied.*

The Federal Rules of Civil Procedure permit individuals or entities to intervene in a matter as follows:

> (b) Permissive Intervention.
>    (1) *In General.* On timely motion, the court may permit anyone to intervene who:
>       (A) is given a conditional right to intervene by a federal statute; or
>       (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24. Whether the court permits intervention is in its sound discretion and requires consideration of whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Brennan v. Cmty. Bank, N.A., 314 F.R.D. 541, 547 (M.D. Pa. 2016) (citing Fed. R. Civ. P. 24(b)). Thus, for permissive intervention, a proposed intervenor must show that: (1) its motion is timely; (2) it has questions of law or fact in common with the pending action; and (3) intervention will not cause undue delay or prejudice for the original parties. Commw. of Pa. v. Rizzo, 530 F.2d 501, 506 (3d Cir.), cert. denied, 426 U.S. 921 (1976). The existence of a common question of law or fact does not automatically entitle an applicant to intervene. Rather, Rule 24(b) necessarily vests "discretion in the district court to determine the fairest and most efficient method of handling a case . . . ." SEC v. Everest Mgmt. Corp., 475 F.2d

1236, 1240 (2d Cir. 1972). Ultimately, the court has ultimate discretion based upon a fact-specific inquiry. Brennan, supra, 314 F.R.D. at 547.

  Here, intervention by Mr. Kounoupis and H&K on Defendant's Motion to Enforce Settlement is inappropriate. With regard to the second prong, the questions of law or fact which are purported to be in common with the pending action, are ancillary issues. For example, H&K contends its intervention is precipitated by its entitlement to a fee on any recovery by Plaintiff. However, the central issue is whether, in fact, there is a settlement that can be enforced in this case. To the extent the court determines no settlement was reached, H&K has no basis for intervention. If this Court determines as a matter of law that a settlement was reached by mutual assent, H&K's entitlement to a fee is a matter for future litigation. With regard to the third prong, Plaintiff is prejudiced by H&K's intervention in this matter as her former attorneys will be permitted to continue to act against her interest. The reason for H&K's intervention is its own self-interest to the detriment of its former client. By way of example only, in the June 14, 2017 letter to Plaintiff, H&K advised Plaintiff, "we are owed $12,500, which we will seek to collect from you regardless of whether you accept payment from Alkermes." (**Exhibit "D"** to Declaration of Plaintiff).

  H&K relies on Venegas v. Skaggs, 867 F.2d 527, 530-531 (9th Cir. 1989), aff'd sub. nom. Venegas v. Mitchell, 495 U.S. 82 (1990) to support its application for intervention in this matter. However, Venegas is readily distinguishable from the present matter. In Venegas, the Ninth Circuit ruled it was inappropriate for the District Court to deny permissive intervention to the plaintiff's former lawyer where a central issue was a dispute over the attorney's contingent fee, which had previously been brought before the court in two prior proceedings. The Venegas court, however, expressly stated, "[w]e hasten to add that we are not holding that an attorney

seeking to defend a contingency fee contract may intervene as of right in the underlying action." Id. at 531.  Here, H&K's application to the court is a first-time effort to intervene in a matter regarding whether a settlement exists, not a dispute over its contingency fee agreement. The court has not made any prior rulings relative to the validity or enforceability of H&K's fee agreement with Plaintiff. Therefore, its intervention in this matter is premature and inappropriate at this time.

H&K also contends that intervention is necessary to protect its interests in this matter, which interests are otherwise unprotected by the parties to the suit. However, Mr. Deratzian submitted his Declaration with attached exhibits to defense counsel in support of Defendant's Motion to Enforce, (**Exhibit "B"** to Rigo Declaration); Mr. Deratzian's Declaration and attached exhibits have been incorporated into Defendants' Motion to Enforce.  As such, H&K's position is preserved and its interests are adequately represented without its intervention. Presumably any testimony offered by H&K if it is permitted to intervene would be consistent with the contents of Mr. Deratzian's Declaration, thus, nullifying H&K's argument in this regard.

Finally, H&K's entitlement to a fee is a disputed issue that cannot be litigated at this time, should the Court find enforcement of the settlement is warranted as a matter of law. Here, if the Court determines that a settlement was reached, Plaintiff has the right to pursue a malpractice claim against H&K, which would call into question its entitlement to a fee in this matter.

Therefore, as a result of the preceding, Plaintiff respectfully submits that H&K's intervention is inappropriate at this time and should be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Enforce Settlement and H&K's Motion to Intervene be DENIED.

Respectfully submitted,
HEIDI WEINTRAUB & ASSOCIATES, LLC

BY:  */s/ Erica Domingo*
ERICA DOMINGO, ESQUIRE
Heidi Weintraub & Associates, LLC
801 North Kings Highway
Cherry Hill, NJ 08034
(856) 406-1990
erica@weintraubassociates.com

Dated: November 14, 2017